IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **AIRPORT CONSULTING SERVICES INTEGRATED, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**PREMIUM SERVICES MANAGEMENT, LLC,**<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:06-CV-00102DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiff Airport Consulting Services Integrated, LLC's (ACSI) motion for partial summary judgment and Defendant Premium Services Management, LLC's (PSM) cross motion for summary judgment. The court held a hearing on the motions on November 27, 2007. At the hearing, Plaintiff ACSI was represented by Thomas N. Crowther and Defendant PSM was represented by Susan E. Edlein and Melanie J. Vartabedian. The court took the matter under advisement. The court has carefully considered the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

**BACKGROUND**

On January 12, 2005, ACSI and PSM executed a written agreement (the Agreement), drafted by ACSI co-owner and lawyer Michael Cooper (M. Cooper), relating to airline fee-based curbside baggage services.  According to the Agreement, "ACSI has developed an active expertise in procedures and management of an integrated on site curbside valet baggage check-in service which is new in the aviation services industry" and PSM "wishes to implement the expertise and management developed by ACSI at various airport locations where PSM has agreements with airlines to provide curbside baggage check-in."  PSM  "has agreements with airlines to provide traditional curbside baggage check-in at LAX [Los Angeles], SFO [San Francisco], ORD [Chicago O'Hare] and EWR [Newark]" airports.  The parties also "wish to mutually expand the use of the ACSI developed curbside valet baggage check-in services to other locations and/or airlines consistent with th[e A]greement."

Paragraphs one and two of the Agreement state that  "ACSI shall . . . provide expertise, management and quality assurance auditing support to PSM" and  "PSM shall furnish curbside baggage check-in service pertaining to domestic baggage at designated airports consistent with accepted airline check-in procedures and written instructions ACSI shall provide to PSM."

> [A]irline customers will be charged for this service.  The original
> charge will be $2.00 for each bag checked. . . .  [Although]
> ACSI/PSM may adjust this fee with advance written notice and
> agreement with the applicable air carrier.  Such fees will be
> clearly posted so customers will know the per bag charge prior to
> turning their bags over to PSM.  All fees collected become the
> property of ACSI/PSM.  PSM shall collect fees and deposit money
> pursuant to procedures mutually agreed upon by both parties.
> PSM will be compensated at an hourly billing rate. . . .  ACSI will
> be compensated for costs incurred to oversee and audit specific
> airport locations, and will receive payment of profit equal to the
> amount included in the PSM hourly rates. . . .  [A] portion of the

>collected revenue may be refunded to an airline(s) if required by contractual agreement.  Any revenue remaining . . . will be divided equally between ACSI and PSM. . . .  [The A]greement . . . shall remain in force for as long as PSM uses this ACSI developed method of curbside valet baggage check-in, or any similar procedure.

Approximately seven months after entering into the Agreement, Al Johnson, president of PSM, sent a letter to ACSI co-owner Howard Cooper (H. Cooper).  In a letter dated August 24, 2005, Johnson informed H. Cooper that the Agreement "will be terminated as of Monday, September 26, 2005."  The letter further stated that

>As you know, the two dollar per bag system is not guaranteed for any specific amount of time.  Based on our past experience, we have found the airline industry to be volatile and financially unstable.  For this reason, it is imperative that [PSM] retains 100% of all revenues collected.
>
>This being said, please cancel all site visits and future audits for all locations including TPA [Tampa], SFO, LAX, and ORD.
>
>I would like to make it absolutely clear that in no way does this termination of agreement reflect that PSM is in any way dissatisfied with your services over the past six months.
>
>Moving forward, if the opportunity presents itself ACSI will be PSM's first choice for any consulting services.

On September 2, 2005, H. Cooper emailed Johnson, expressing that he had received Johnson's letter "stating [PSM's] intention to cancel [the] contract between ACSI and PSM" and that "ACSI . . . has no desire to end the business relationship."  In his email, H. Cooper also stated that he had "received information . . . that [PSM] agreed to give the skycaps in ORD $1 of the $2 per bag fee charged to customers" and that "[a]s business partners, we obviously have a vested interest in how the joint venture is dispersed."

On September 7, 2005, Johnson sent an email to H. Cooper explaining that

> [i]n reference to the letter I sent, it is our intention to terminate our agreement with ACSI.  After returning from Chicago, I consulted with my partner as well as our financial advisor.  The end result of the meeting was that ACSI had done its part in all job starts and follow ups, however the need to improve PSM's financial situation could be greatly improved by ending the current agreement with ACSI.  Over the past several years the company's financial position has been very weak due to [a]irline bankruptcies and the reduction of man hours.  In spite of the great success of the $2.00 per bag program, we have been given no assurances as to how long it will last or if more money will be required by the airlines.  There are no underlying reasons for ending this agreement other than what I have stated. . . .  I sincerely hope that you don't take this financial decision personally.
>
> In addition, I will share with you what I can, reference ORD.  Because you have ties to our competitor I will not disclose the content of our union agreement.  I can tell you that PSM faced intense political pressure outside of the union/skycap negotiations.  Based on these outside forces we did make short term and long term concessions.  In the short term our revenue will be impacted.  This means that profits from ORD will be impacted for the balance of our agreement.  I know you have vested interest in revenue, more specifically profits.

In his email, Johnson also stated, "We will do our final reconciliation with ACSI the week of the 26th.  If you feel that any parts of the financials are inaccurate please email the proposed corrections to me."

Following the August 24, 2005 letter, ACSI provided no services to PSM.  On September 23, 2005, ACSI wrote to PSM, contesting both the termination and the fees received from the skycap services at ORD.  On October 7, 2005, PSM tendered a check in the amount of $17,330.35 for payment through September 24, 2005.  The check stated that it was "final payment for services."  PSM sent four remittance statements, also dated October 7, 2005, that stated, "Please be advised that this is final payment for your services with [PSM]."  ACSI

received the October 7, 2005 check and did not return the funds to PSM.

In October 2005, ACSI filed suit against PSM, alleging that PSM breached the Agreement in continuing to use the ACSI developed method of curbside baggage following PSM's termination of the Agreement.  ACSI also alleged that PSM breached the Agreement in "agree[ing] to provide to a local union a portion of fees belonging equally to [ACSI] and [PSM]" and in "fail[ing] to pay to [ACSI] all profits to which [ACSI] is entitled to under the Agreement."  In its Complaint, ACSI also claims that PSM violated its obligation of good faith and fair dealing in seeking to terminate the Agreement for the sole reason of improving PSM's financial situation by taking all revenues under the Agreement for itself.

In its Answer, PSM admits "that it is using a method of curb side valet baggage check-in service but denies that it is [the ACSI] method."  PSM denies that it improperly terminated the Agreement.

In July 2007, ACSI moved for partial summary judgment, asking the court to rule that the Agreement "is a valid contract and is binding upon [PSM] in accordance with the terms thereof." PSM cross motioned for summary judgment in August 2007, arguing that the Agreement's duration term of "for as long as PSM uses this ACSI developed method of curbside valet baggage check-in, or any similar procedure" is fatally ambiguous and renders the Agreement unenforceable under Utah law.  PSM also contended in its cross motion that "PSM was entitled to terminate the Agreement upon reasonable notice"; that PSM tendered its October 7, 2005 check in resolution of the parties' dispute and the check constituted a valid accord and satisfaction; that ACSI's claim for breach of the covenant of good faith and fair dealing is without factual support; and that punitive damages are not available to ACSI as a matter of law

for its breach of contract claim.

## DISCUSSION

Under Federal Rule of Civil Procedure 56(c), a grant of summary judgment is only appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, "we view the factual record and draw any reasonable inferences therefrom in the light most favorable to the nonmoving party." *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). "Because this case involves cross-motions for summary judgment, the court must 'construe all inferences in favor of the party against whom the motion under consideration is made.'" *Am. Inv. Fin. v. United States*, 364 F.Supp. 2d 1321, 1323-24 (D. Utah 2005) (quoting *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000)) (additional quotations omitted).

ACSI moves for partial summary judgment on the issue of whether the Agreement constitutes a valid and binding contract. ACSI argues that the Agreement is a valid and binding contract because the undisputed facts demonstrate a lawful offer, acceptance, and consideration.

PSM does not contest ACSI's assertions that the undisputed facts show an initial lawful offer, acceptance, and consideration. Instead, PSM argues that there is no valid and binding contract between the parties because the Agreement is fatally ambiguous and thus unenforceable. PSM further claims that even if the Agreement is enforceable, PSM had to provide only reasonable notice of termination because of the indefinite nature of the duration term; that ACSI provided no continuing consideration justifying ACSI's entitlement to profits after PSM

terminated the Agreement; that there is no evidentiary support for ACSI's claim that PSM violated the covenant of good faith and fair dealing; that PSM's offer and ACSI's acceptance of the October 2005 check constituted a valid accord and satisfaction, extinguishing ACSI's breach of contract claims as a matter of law; and that ACSI's punitive damages claim is inappropriate as a matter of law.

The court first notes ACSI's concession that punitive damages are inappropriate and grants PSM's motion for summary judgment as to the punitive damages issue. Second, the court agrees with ACSI that the Agreement is unambiguous, but nonetheless grants PSM's motion for summary judgment on grounds of accord and satisfaction. Because the court grants PSM's motion for summary judgment on grounds of accord and satisfaction, ACSI's motion for partial summary judgment as to the validity of the Agreement is moot, and it is unnecessary for the court to address PSM's additional grounds for summary judgment.

Regarding ambiguity, PSM contends that the Agreement term providing that the contract "shall remain in force for as long as PSM uses this ACSI developed method of curbside valet baggage check-in, or any similar procedure" renders the contract fatally ambiguous because the Agreement fails to define what constitutes the ACSI developed method, or any similar procedure, and therefore it is impossible to determine whether the contract has been breached or terminated. PSM contends that the court should construe any ambiguities against ACSI, the drafter of the Agreement. PSM further contends that if the court determines the Agreement is ambiguous, extrinsic evidence fails to resolve the ambiguity because neither PSM or ACSI can objectively define what constitutes the ACSI method.

In response, ACSI argues that the Agreement is not ambiguous, much less fatally

ambiguous. ACSI claims that "[i]f [PSM] continues to provide a baggage service involving the [following] characteristics, then [PSM] is using [ACSI's method] laid out in paragraph 2 of the Agreement or a similar system":

> (1) airline customers are charged $2.00 per bag; (2) such fee will be clearly posted; (3) fees will be collected and posted pursuant to procedures agreed upon; (4) [PSM] will be compensated on an hourly basis; (5) [ACSI] will be compensated for costs incurred to oversee and audit specific airport locations and will receive a profit equal to the hourly amount received by [PSM]; (6) a portion of fees collected will be paid to airlines; and (7) remaining revenues will be paid equally to [ACSI] and [PSM].

The Utah Supreme Court has held that the essential terms of "a contract must be described in detail sufficient to make it possible to ascertain whether the agreement has been kept or broken." *Evans v. Bd. of County Comm'rs*, 2005 UT 74, ¶12, 123 P.3d 432 (citing *Nielsen v. Gold's Gym*, 2003 UT 37,¶13, 78 P.3d 600). "'[W]here a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable.'" *Sachs v. Lesser*, 2007 UT App 169, ¶18, 163 P.3d 662 *(*quoting *Stangl v. Todd,* 554 P.2d 1316, 1319 (Utah 1976)) (alteration in original), *cert. granted*, 168 P.3d 1264 (Utah 2007)*.*

"A contract provision is ambiguous if it is capable of more than one reasonable interpretation because of 'uncertain meanings of terms, missing terms or other facial deficiencies.'" *Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991) (quoting *Faulkner v. Farnsworth*, 665 P.2d 1292, 1293 (Utah 1983)). In "determining whether a contract is ambiguous, any relevant evidence must be considered." *Ward v. Intermountain Farmers Ass'n.*, 907 P.2d 264, 268 (Utah 1995) . "If after considering such evidence the court determines that the interpretations contended for are reasonably supported by the language of the contract, then

extrinsic evidence is admissible to clarify the ambiguous terms." *Id*. "Conversely, if after considering such evidence, the court determines that the language of the contract is not ambiguous, then the parties' intentions must be determined solely from the language of the contract." *Id*.

The doctrine of construing ambiguities in a contract against the drafter only comes into play

> after extrinsic evidence is considered and the court is still uncertain as to the intention of the parties. . . .  In other words, the doctrine . . . functions as a kind of tie-breaker, used as a last resort by the fact[]finder after the receipt and consideration of all pertinent extrinsic evidence has left unresolved what the parties actually intended.

*Wilburn v. Interstate Elec.*, 748 P.2d 582, 585 (Utah Ct. App. 1988).

Viewing all relevant evidence and inferences in a light most favorable to ACSI, the non-moving party as to the ambiguity issue, the court determines that the Agreement is unambiguous as to what constitutes the ACSI method.  Paragraphs one and two of the Agreement provide that ACSI will supply PSM with expertise, management, and quality assurance; that PSM will supply the airline curbside baggage check-in service; that the customers will be charged a fee for the curbside check-in service; that this fee belongs to ACSI and PSM; that PSM will be compensated at an hourly billing rate; that ACSI will be compensated for its oversight and auditing costs and will receive payment equal to PSM's hourly rates; that a portion of the revenue collected may go to airlines, if required by contractual agreement; and that any remaining revenue will be divided equally between ACSI and PSM.  Following this description, paragraph three explains that the "[the A]greement . . . shall remain in force so long as PSM uses *this* ACSI developed method of curbside valet baggage check-in, or any similar procedure."

(Emphasis added.).

H. Cooper and M. Cooper, drafter of the Agreement, both provided testimony supporting that the ACSI method essentially is the Agreement between ACSI and a service provider—here, PSM—and the particular terms the Agreement entails, such as PSM providing the services, ACSI providing the management and expertise, the customers rather than the airline paying the fees, and the equal division of revenue between ACSI and PSM. Specifically, M. Cooper explained that the ACSI method is not defined as a term within the Agreement because the method is " what the contract is, . . . what the system is, what ACSI will do and what they [PSM] will do." And H. Cooper testified that the basic elements of the ACSI method are "ACSI contracts, subcontracts, or partners with a provider and supplies the provider with method, know how, and administrative services"; the "[p]rovider hires and pays [s]kycaps an hourly wage"; "[s]kycaps customarily receives tips from customers in addition to hourly wage from provider"; the "[p]rovider does not bill airline for any amount"; the "[p]rovider charges customer a per bag fee when bags are taken at the curb (fee has been $2.00 per bag flat fee)"; and "[o]ut of [the] $2.00 per bag fee, the following are paid . . . skycap hourly wage[,] . . . [a] pre-agreed amount to airline[,] . . . [p]rovider's expenses[,] . . . ACSI expenses, if applicable[,] . . . [and p]rofit to ACSI or percentage profit split between provider and ACSI." The services provided by ACSI are "[s]etup and training," "[a]uditing," "[r]eporting, banking, and other financial procedures," and "[a]dministrative know how."

Having determined that the Agreement is unambiguous as to what constitutes the ACSI method, the court next determines that PSM's tender and ACSI's acceptance of the October 7, 2005 check, stating it was "final payment for services," constituted a valid accord and

satisfaction that extinguishes ACSI's claims as a matter of law. Utah code section 70A-3-311 governs "[a]ccord and satisfaction by use of instrument." Utah Code. Ann. § 70A-3-311 (Supp. 2007). Section 70A-3-311 states that

> (1) If a person against whom a claim is asserted proves that that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, the amount of the claim was unliquidated or subject to a bona fide dispute, and the claimant obtained payment of the instrument, the following subsections apply.
>
> (2) . . . the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

*Id*. § 70A-3-311(1)-(2). Section 70A-3-311 essentially codifies Utah common law with regard to accord and satisfaction. *See e.g.*, *Smith v. Grand Canyon Expeditions Co.*, 84 P.3d 1154, 1158 (Utah 2003) (explaining that Utah courts "have developed a three-part test for accord and satisfaction[:] . . . [t]here must be (1) a bona fide dispute over an unliquidated amount, (2) a payment made in full settlement of the entire dispute, and (3) an acceptance of the payment").

Here, PSM's August 24, 2005 letter expressed that PSM was terminating the Agreement and retaining 100% of the revenue as of September 26, 2005. ACSI's response to this letter indicated both a desire to not terminate the Agreement and an awareness that PSM may have agreed to a fee arrangement with ORD skycaps that affected ACSI's vested interest under the Agreement. On September 7, 2005, PSM reiterated its decision to terminate the Agreement and explained that with regard to the ORD skycaps, PSM "did make short term and long term concessions. In the short term our revenue will be impacted. This means that profits from ORD will be impacted for the balance of our agreement. [PSM] know[s that ACSI] ha[s] vested

interest in revenue, more specifically profits." In this September 7 communication, PSM also informed ACSI that "[PSM] will do [its] final reconciliation with ACSI the week of the 26th. If [ACSI] feel[s] that any parts of the financials are inaccurate please email the corrections." On September 23, 2005, ACSI wrote to PSM, contesting both the termination and the fees received from the skycap services at ORD. On October 7, 2005, PSM tendered a check in the amount of $17,330.35 for payment through September 24, 2005. The check stated that it was "final payment for services." PSM sent four remittance statements, also dated October 7, 2005, that stated, "Please be advised that this is final payment for your services with [PSM]." ACSI received the October 7, 2005 check and did not return the funds to PSM.

These undisputed facts demonstrate that at the time PSM tendered, and ACSI retained, the October 7, 2005 check, a bona fide dispute existed as to the amount owed under the Agreement and this amount was unliquidated. Furthermore, it is evident that PSM's check contained a conspicuous statement that the check was tendered in full satisfaction of this dispute.

ACSI nonetheless maintains that its claims are not barred on grounds of accord and satisfaction because it maintains that at the time ACSI received the check ACSI did not dispute the amount owed and that a dispute arose only when ACSI learned that PSM allegedly continued to use the ACSI method following PSM's termination of the Agreement. But, as discussed above, under the Agreement, "[a]ll fees collected become the property of ACSI/PSM" and remaining revenues will be "divided equally between ACSI and PSM." Thus, ACSI's knowledge and contestation of the alleged fee splitting with ORD skycaps, and its knowledge that PSM planned to retain 100% of the revenue, demonstrates that a dispute existed as to the amount owed under the Agreement. And ACSI's October 2005 complaint reflects this dispute,

basing ACSI's breach of contract claim on PSM's continued use of the ACSI method as well as PSM's "agree[ment] to provide to a local union a portion of fees belonging equally to [ACSI] and [PSM]" and PSM's "fail[ure] to pay to [ACSI] all profits to which [ACSI] is entitled to under the Agreement."

Furthermore, as discussed above, ACSI avers that two central elements of the ACSI method are that "[a]ll fees collected become the property of ACSI/PSM" and that remaining revenues will be "divided equally between ACSI and PSM." Thus, it is unclear how ACSI can both accuse PSM of continuing to use the ACSI method while simultaneously basing its breach of contract claim on PSM's refusal to adhere to these central elements of the ACSI method. As ACSI itself explains, if PSM's baggage service no longer involves these characteristics, then PSM is no longer using ACSI's method.

In sum, the court's grant of PSM's cross motion for summary judgment on grounds of accord and satisfaction extinguishes ACSI's breach of contract claims as a matter of law and renders ACSI's motion for partial summary judgment moot.

## CONCLUSION

PSM's Cross Motion for Summary Judgment is GRANTED.

DATED this 4th day of December, 2007.

BY THE COURT:

*Dale A. Kimball*

DALE A. KIMBALL
United States District Judge